EMANUEL E. FALK AND JEAN B. FALK, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54477–54480.   Filed May 18, 1961.

*Joseph E. McAndrews, Esq.,* for the petitioners.
*Mark H. Berliant, Esq.,* for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1950 and 1951 as follows:

| Docket No. | Petitioner | Deficiencies | |
|---|---|---|---|
| | | 1950 | 1951 |
| 54477 | Emanuel E. and Jean B. Falk | $6,101.81 | $1,918.73 |
| 54478 | A. L. and Loraine B. Drucker | 5,535.56 | 1,388.49 |
| 54479 | Albert T. Brout | 23,204.23 | 1,437.32 |
| 54480 | F. O. and Marie P. Blechman | 9,617.50 | 1,911.01 |

The only remaining issue relates to the year 1950 and is whether certain income reported by petitioners in that year as long-term capital gain should be taxed as ordinary income under section 117(m)(1), I.R.C. 1939. However, in connection with this issue, petitioners Emanuel E. and Jean B. Falk and A. L. and Loraine B. Drucker have amended their petitions, alleging that the gain reported by them in 1950 was realized in 1949 and is therefore not taxable in 1950;

[1] Proceedings of the following petitioners have been consolidated herewith for purposes of trial, briefs, and opinion: A. L. Drucker and Loraine B. Drucker, Docket No. 54478; Albert T. Brout, Docket No. 54479; and F. O. Blechman and Marie P. Blechman, Docket No. 54480.

and that there are overpayments in income taxes for the year 1950 in the amount of $3,091.45 due the joint petitioners in Docket Nos. 54477 and 54478, respectively.

Another issue relating to both 1950 and 1951 was conceded at the hearing so that there is no longer any dispute as to the deficiencies determined for the year 1951.

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners[2] Emanuel E. and Jean B. Falk reside in Hampton, Virginia; A. L. and Loraine B. Drucker in Newport News, Virginia; and Albert T. Brout, F. O. and Marie P. Blechman in Warwick, Virginia (formerly Hilton Village). The returns for the years 1950 and 1951 of all the petitioners were filed with the then collector of internal revenue in Richmond, Virginia.

Petitioners Falk, Drucker, Brout, and Blechman are unrelated by blood or marriage except that Drucker and Blechman are brothers-in-law, Drucker having married Blechman's sister. Drucker and Falk were partners in a real estate, rental, and insurance business during the years 1949 through 1951, but there were no other common business interests or relationships among the petitioners during these years or previously.

Warwick Center Corporation was organized under the laws of Virginia on July 9, 1948, with a capital of $3,000. It issued 100 shares of $10-par-value stock to petitioner Brout, 100 shares to petitioner Blechman, 50 shares to petitioner Drucker, and 50 shares to petitioner Falk. On July 9, 1948, Warwick Center Corporation purchased a parcel of land containing 27.979 acres in Newport News, Virginia, from J. M. Dozier at a price of $1,400. It also purchased three other parcels of land in 1948 and sold them in 1949 but these are not here involved.

On October 20, 1948, the certificates of stock originally issued by Warwick Center Corporation were canceled and certificates were reissued on the same date as follows: 150 shares to petitioner Brout, 75 shares to petitioner Blechman, and 37½ shares each to petitioners Drucker and Falk. The basis of each of the petitioners in the stock of Warwick Center Corporation on and after October 20, 1948, was as follows:

| | |
|---|---|
| Brout | $1,500 |
| Blechman | 750 |
| Drucker | 375 |
| Falk | 375 |

[2] Petitioners will sometimes be referred to herein either individually or collectively as Falk, Drucker, Brout, and Blechman.

Warwick Gardens #2, Inc., was incorporated under the laws of Virginia on May 19, 1949, with a capital stock of $1,100 consisting of $100 of preferred stock issued to the Federal Housing Administration (hereinafter sometimes referred to as FHA) and 1,000 shares of common stock of the par value of $1 per share issued to:

|  | Shares |
|---|---|
| Brout | 333⅓ |
| Blechman | 333⅓ |
| Falk | 166⅔ |
| Drucker | 166⅔ |

The holders of the common stock paid in a total of $1,000 in cash to Warwick Gardens #2, Inc., for the common stock.

On May 22, 1949, petitioners received from FHA a commitment for insurance in the amount of $2,025,200 with respect to a loan at 4 percent to finance an apartment project designated as Warwick Gardens, Section II, to be constructed by Warwick Gardens #2, Inc. Petitioner Brout was shown on the commitment as "Sponsor." The apartment project was to be located on the parcel purchased from Dozier on July 9, 1948, consisting of 27.979 acres and referred to in the commitment as approximately 1,218,800 square feet. The FHA project analysis with respect to Warwick Gardens, Section II, estimated the replacement cost of the property as of May 22, 1949, at $2,352,647. Included in such estimated replacement cost of the property was the parcel of 27.979 acres at a "Fair Market Price for This Parcel of Land in Fee Simple $100,000." The annual net income, after operating expenses and taxes, was estimated in the commitment at $133,530. The commitment was dated March 9, 1949, amended May 22, 1949.

On May 26, 1949, each of the four stockholders (the petitioners herein) of Warwick Center Corporation transferred all of their stock in that corporation to Warwick Gardens #2, Inc., and on the same day four promissory notes were issued by Warwick Gardens #2, Inc., in the aggregate of $100,000 in the following respective amounts:

| Brout | $50,000 |
|---|---|
| Blechman | 25,000 |
| Drucker | 12,500 |
| Falk | 12,500 |
| Total | 100,000 |

The notes were unqualified, negotiable instruments payable to the order of each of the petitioners 1 year after date, with interest at 4 percent per annum.

On June 9 and 10, 1949, checks were issued by Warwick Gardens #2, Inc., as follows:

|  |  | *Check dated* |
| --- | --- | --- |
| Brout | $1,463.25 | (June 9, 1949) |
| Blechman | 731.63 | (June 10, 1949) |
| Drucker | 365.81 | (June 10, 1949) |
| Falk | 365.81 | (June 9, 1949) |
| Total | 2,926.50 | |

The notes of May 26, 1949, and the checks of June 9 and 10, 1949, aggregating $102,926.50, constituted the consideration for the transfer of petitioners' stock in Warwick Center Corporation.

On March 15, 1950, the notes referred to above were paid with interest by Warwick Gardens #2, Inc., by checks dated March 15, 1950, as follows:

|  | Notes | Interest | Total |
| --- | --- | --- | --- |
| Brout | $50,000 | $1,611.11 | $51,611.11 |
| Blechman | 25,000 | 805.55 | 25,805.55 |
| Drucker | 12,500 | 402.78 | 12,902.78 |
| Falk | 12,500 | 402.78 | 12,902.78 |
| Total | 100,000 | 3,222.22 | 103,222.22 |

On May 26, 1949, following the transfer to Warwick Gardens #2, Inc., of all the stock of Warwick Center Corporation, a plan of liquidation of Warwick Center Corporation was adopted under which the 27.979 acres then owned by Warwick Center Corporation would be distributed in partial liquidation to Warwick Gardens #2, Inc., with final liquidation to occur upon receipt by Warwick Center Corporation of payment of a $5,000 note from the purchasers of the other properties not here involved. A deed dated May 26, 1949, from Warwick Center Corporation to Warwick Gardens #2, Inc., with respect to the 27.979 acres distributed in liquidation was recorded in the clerk's office of the Circuit Court for the County of Warwick, Virginia, on June 2, 1949.

On March 15, 1950, the purchasers of the other properties not here involved paid the note of $5,000 referred to in the previous paragraph, together with interest of $161.12. Warwick Gardens #2, Inc., then completely liquidated Warwick Center Corporation, taking over its only remaining asset, cash in the amount of $3,202.26.

During the latter half of 1949, Warwick Gardens #2, Inc., constructed an apartment rental project of 293 rental units on the 27.979 acres of land received in liquidation from Warwick Center Corporation. Construction of the apartment project was accomplished with mortgage proceeds of a loan in the amount of $2,025,200 insured by the FHA under section 608 of the National Housing Act. The $2,025,200 mortgage loan was obtained from the New York Life Insurance Company in payments as follows:

| | |
|---|---|
| June 2, 1949 | $17,041.00 |
| July 12, 1949 | 111,524.62 |
| Aug. 9, 1949 | 277,638.92 |
| Sept. 9, 1949 | 468,545.22 |
| Oct. 10, 1949 | 448,966.33 |
| Nov. 5, 1949 | 195,721.33 |
| Dec. 7, 1949 | 229,342.74 |
| Mar. 9, 1950 | 276,420.84 |
| | [1] 2,025,200.00 |

[1] The payments actually total $2,025,201.

The buildings were constructed by States Construction Company, Newport News, Virginia, a corporation controlled by petitioner Brout. Amounts expended by Warwick Gardens #2, Inc., with respect to the project were as follows:

| | |
|---|---|
| Land | $277,214.35 |
| Sidewalks | 14,478.56 |
| Buildings | 1,472,173.13 |
| Building equipment | 121,419.76 |
| Power lawnmower | 187.50 |
| Clothesline equipment | 4,577.78 |
| Playground equipment | 1,709.75 |
| Total cost of physical assets | 1,891,760.83 |
| Legal and brokerage fees (Legal fee to Jones, Blechman & Woltz) | 41,567.10 |
| Fees paid to Investment Corporation of Norfolk | 20,252.00 |
| Grand total | 1,953,579.93 |

Included in the above amount of $277,214.35 expended by Warwick Gardens #2, Inc., for land was an amount of $97,926.50, representing an allocated portion of the consideration of $102,926.50 paid by Warwick Gardens #2, Inc., to petitioners for the stock of Warwick Center Corporation.

Difficulty was experienced in renting the apartments (rental operations having begun in December 1949) and the corporation failed to make any reduction of the mortgage. As of September 29, 1950, only 35 of the 293 rental units of Warwick Gardens, Section II, were occupied. The insurance company, after several notices to the FHA, foreclosed on the mortgage on November 29, 1950, and bid in the property for $345,000. It was then turned over to the FHA, holder of the preferred stock, and the FHA indemnified the insurance company under the mortgage insurance. Subsequently, on September 5, 1951, the property was sold by the FHA at public auction for $2,040,000.

Warwick Gardens #2, Inc., had operating losses of $133,180.90 and $93,448.79 for the fiscal years ended September 30, 1950, and September 30, 1951, respectively. Apart from the $102,926.50 received by petitioners in consideration for their stock in Warwick Center Corpora-

tion, and which is in issue in these proceedings, Warwick Gardens #2, Inc., made no distributions or payments to its stockholders.

On the Federal income tax return filed by petitioner Brout for the year 1949 he reported gain realized on the sale or other disposition of 150 shares of stock of Warwick Center Corporation to Warwick Gardens #2, Inc., on the installment sales method as long-term capital gain. Under the installment sales method as reflected on Brout's return, 97.07 percent of the proceeds received constituted gain with the result that $1,420.38 of the $1,463,25 received in 1949 by Brout was shown on his return for 1949 as long-term capital gain. On his Federal income tax return for 1950 Brout reflected $48,542.87 of the $50,000 payment received in 1950 on the note from Warwick Gardens #2, Inc., as long-term capital gain. Also, in his 1950 tax return Brout included as ordinary income the interest received of $1,611.11 on the 4-percent note paid in 1950 by Warwick Gardens #2, Inc.

Petitioners F. O. and Marie P. Blechman on their joint returns for 1949 and 1950 reported the gain from the sale or other disposition of the 75 shares of stock of Warwick Center Corporation in the same manner as petitioner Brout did with respect to his 150 shares.

On the joint Federal income tax returns filed by petitioners A. L. and Loraine B. Drucker and Emanuel E. and Jean B. Falk for the year 1949, no portion of proceeds received on the sale of stock of Warwick Center Corporation in 1949 was included in income. On the joint income tax returns filed by the Druckers and Falks for the year 1950 the entire gain on the sale of 37½ shares of Warwick Center Corporation stock to Warwick Gardens #2, Inc., was reported as long-term capital gain, and no election of the installment sales method was made. On these joint Federal income tax returns filed for the year 1950 the interest received of $402.78 on the 4-percent note paid in 1950 by Warwick Gardens #2, Inc., was included as ordinary income.

Each of the petitioners was on the cash basis method of reporting his income in the year 1950.

The respondent determined deficiencies for 1950 by including in each of the petitioners' 1950 income as "ordinary income" the following amounts received from Warwick Gardens #2, Inc.:

| | | |
|---|---|---|
| Brout | $51,463.25 | ($1,463.25 in 1949 and $50,000 in 1950) |
| The Blechmans | 25,731.63 | (731.63 in 1949 and 25,000 in 1950) |
| The Falks | 12,865.81 | (365.81 in 1949 and 12,500 in 1950) |
| The Druckers | 12,865.81 | (365.81 in 1949 and 12,500 in 1950) |

Identical explanations of the above inclusions were given in a statement attached to each deficiency notice, as follows:

It has been determined that amounts received from * * * Warwick Gardens No. 2, Incorporated, and/or Warwick Center Corporation constitute ordinary income rather than capital gains as reported in your returns.

OPINION.

Respondent contends that the redemption of the notes on March 15, 1950, and the issuance of the checks on June 9 and 10, 1949, were *in substance* distributions from a collapsible corporation and that the entire amount of $102,926.50 (notes and checks) should "be considered as gain from the sale or exchange of property which is not a capital asset" taxable as ordinary income under section 117(m)[3] of the 1939 Code, as amended.

It is our opinion that subsection (m) of section 117, which was added to the 1939 Code by section 212 of the Revenue Act of 1950 (approved Sept. 23, 1950), has no application to this remaining issue. Section 212(b) of the 1950 Act specifically provides that subsection (m) "shall be applicable to taxable years ending after December 31, 1949, but shall apply only with respect to gain realized after such date." All of the controlling transactions giving rise to the gains here involved occurred in 1949 more than a year before the enactment of the 1950 Act. On May 26, 1949, petitioners transferred all of their stock in Warwick Center Corporation to Warwick Gardens #2, Inc., in consideration for the four checks totaling $2,926.50 and the four unqualified, negotiable, interest-bearing promissory notes totaling $100,000. This was a "sale or other disposition of property" in 1949 as those words are used in section 111(a) and (b) of the Internal Revenue Code of 1939.[4] Cf. *Aaron W. Wolfson*, 1 B.T.A. 538; *Wolfson* v. *Reinecke*, 72 F. 2d 59 (C.A. 7, 1934). Also, on May 26, 1949, but after the transfer of the stock, Warwick Center Corporation distributed in partial liquidation to Warwick Gardens #2, Inc., the

---

[3] SEC. 117. CAPITAL GAINS AND LOSSES.

(m) COLLAPSIBLE CORPORATIONS.—

(1) TREATMENT OF GAIN TO SHAREHOLDERS.—Gain from the sale or exchange (whether in liquidation or otherwise) of stock of a collapsible corporation, to the extent that it would be considered (but for the provisions of this subsection) as gain from the sale or exchange of a capital asset held for more than 6 months, shall, except as provided in paragraph (3), be considered as gain from the sale or exchange of property which is not a capital asset.

(2) DEFINITIONS.—

(A) For the purposes of this subsection, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, or for the holding of stock in a corporation so formed or availed of, with a view to—

(i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, or producing the property of a substantial part of the net income to be derived from such property, and

(ii) the realization by such shareholders of gain attributable to such property.

Paragraphs (2) and (3) of section 117(m) were later amended by section 326 of the Revenue Act of 1951 by adding thereto other provisions relating to the purchase of inventories with which we are not here concerned.

[4] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

parcel of land containing 27.979 acres; and the deed dated May 26, 1949, covering this land was properly recorded on June 2, 1949. Thereafter, during the latter half of 1949, Warwick Gardens #2, Inc., constructed apartments containing 293 rental units on the land and commenced renting the apartment units in December 1949. All this occurred prior to the effective date of subsection (m).

It has been stipulated that apart from the $102,926.50 received by petitioners in consideration for their stock in Warwick Center Corporation "and which is in issue in these proceedings, Warwick Gardens #2, Inc., made no distributions or payments to its stockholders." Nevertheless the respondent argues that since the apartment project actually cost only $1,676,365.58 (excluding the cost of land)[5] which was less than the estimated replacement cost, and less than the insured loan, we should find that *in substance* Warwick Gardens #2, Inc., was formed or availed of principally for the construction of property with a view to *a distribution* to its shareholders prior to the realization by the corporation of a substantial part of the net income to be derived from the property, and that *in substance* the payment of the notes in 1950 was such a distribution. We do not agree. Subsection (m) of section 117 was not in existence at the time the stock was transferred or at the time the notes were paid. The payment of the notes in 1950 was in no sense a "distribution" by Warwick Gardens #2, Inc. It was in fact and in substance merely a payment with interest of an obligation (notes) incurred on May 26, 1949, more than a year before the enactment of subsection (m). Warwick Center Corporation was not a collapsible corporation. If we assume that Warwick Gardens #2, Inc., might be considered a collapsible corporation under certain circumstances, it is amply clear that petitioners received no gain from the sale or exchange of any stock of Warwick Gardens #2, Inc., nor did they receive any distributions from that corporation.

We, therefore, hold that as far as this remaining issue is concerned, subsection (m) of section 117 has no application. It follows that since the "sale or other disposition" of the stock of Warwick Center Corporation occurred in 1949, petitioners Brout and Blechman were within their rights in reporting their gain on the installment basis as long-term capital gain. Petitioners Drucker and Falk did not elect to report on the installment basis and in their amendments to their respective petitions they allege that they "erroneously included in income for the year 1950 the amount of $12,365.81 as long term capital gain on the sale of stock of Warwick Center Corporation to Warwick Gardens #2, Inc., inasmuch as the gain on such sale was realized in the year 1949." We agree with petitioners Drucker and Falk that this

---

[5] The cost of land is not to be included in the total cost of construction. *Rose Sidney,* 30 T.C. 1155, affd. 273 F. 2d 928 (C.A. 2) ; *Arthur Pomponio,* 33 T.C. 1072, 1081, affd. 288 F. 2d 827 (C.A. 4).

was a 1949 "sale or other disposition of property" and that under section 111(a) and (b) of the 1939 Code the gain ordinarily would be the sum of any money received plus the fair market value of the notes over the adjusted basis of the stock. However, petitioners Drucker and Falk did not report the transaction in 1949 and they have not established the fair market value of the notes when received on May 26, 1949. Under such circumstances, and having held that subsection (m) has no application, we have no alternative, as far as this issue is concerned, but to leave petitioners Drucker and Falk in the same position they were in when they filed their returns. It is so held.

*Decisions will be entered under Rule 50.*